IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

SEAN P. HORTON,

        Plaintiff,      Case No. 3:07 CV 1295

  -vs-

                   MEMORANDUM OPINION

JOHN E. POTTER,
POSTMASTER GENERAL

        Defendant.

KATZ, J.

  Plaintiff Sean Horton was a supervisor employed by the United States Postal Service ("USPS") in Toledo, OH, until his employment was terminated in April, 2007.  In this action he brings claims against the USPS alleging sexual harassment and retaliatory termination.  Horton alleges that he was harassed by some of his co-workers and supervisors, who perceived him to be homosexual.  This matter is presently before the Court on the motion of the Defendant, United States Postmaster General John Potter, for summary judgment. (Doc. 49).  For the reasons that follow, the motion will be granted as to Plaintiff's retaliation claim (Count Three of the Second Amended Complaint), and denied otherwise.

**I. Background**

  On June 22, 2006, Horton was working at his desk when he was approached by another employee, who told him of sexually-explicit graffiti inside the facility's men's bathroom referencing Horton.  After seeing the graffiti himself, Horton contacted Human Resources Specialist Herb Wallace.  USPS promptly removed the graffiti, and the then-Acting Plant Manager Janice S. Bruns initiated an investigation.  The USPS, however, was not able to determine who had written the graffiti.  Horton also learned from Anderson Hartfield, the Supervisor of

Maintenance Operations, that other similar graffiti mentioning Horton had been found in another men's bathroom the previous day, June 21, 2006, and removed.

As part of her investigation, Bruns asked Plaintiff how he would like to see the matter resolved. Plaintiff stated that he wanted USPS to conduct a service talk on sexual harassment. USPS conducted a service talk on sexual harassment at the Toledo Processing and Distribution Center in July of 2006, as Plaintiff requested.

At around the same time, Russell Ferris, another employee, reported to his supervisor (and ex-wife), Robin Harris, that he had overheard a conversation between two craft employees, Philip Feltman and James Meeks, during which Feltman said that Horton made sexual advances towards him. Robin Ferris then conducted an informal investigation into the incident, interviewing Russell Ferris, Feltman, Meeks, and Horton. Feltman told Robin Ferris that he did not remember the incident and did not wish to pursue the matter. Horton said that he did not know who Feltman was and denied the allegations. After the interviews, Robin Ferris verbally reported the incident at a manager's meeting on June 27, 2006.

Vance Dever, Manager of Distribution Operations, then conducted a formal investigation of the incident, concluding that no sexual harassment had taken place. Feltman, Meeks, and Russell Ferris were made to watch a "video on sensitivity" and review USPS policies on sexual harassment and diversity. (Doc. 49, Exh. D at 47-48).

Horton expressed disappointment with the investigations, and told his superiors that he thought the above-described incidents had created a hostile work environment. Shortly after the investigations, USPS transferred Horton, against his wishes, to another facility in Toledo, where he worked in customer relations. Later, Horton, was restored to his position at his former facility.

During the time of his transfer, Horton received threatening, sexually-explicit text messages on his cell phone. Horton reported receiving these messages to Bruns, but no action was taken after the messages were found to be untraceable.

Horton filed an Equal Employment Opportunity (EEO) complaint in September of 2006, alleging that he had been sexually harassed. A final agency decision on this complaint was rendered in February 2007, rejecting Horton's claims. He then filed this suit on May 3, 2007.

**II. Standard of Review**

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial responsibility of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). The movant may meet this burden by demonstrating the absence of evidence supporting one or more essential elements of the non-movant's claim. *Id.* at 323-25. Once the movant meets this burden, the opposing party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 2541, 91 L. Ed. 2d 202 (1986) (*quoting* Fed. R. Civ. P. 56(e)).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient "simply

[to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553; *see also Harris v. General Motors Corp.*, 201 F.3d 800, 802 (6th Cir. 2000). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S. Ct. at 2552.

"In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the nonmoving party." *Williams v. Belknap*, 154 F. Supp. 2d 1069, 1071 (E.D. Mich. 2001) (citing *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987)). However, "'at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter,'" *Wiley v. U.S.*, 20 F.3d 222, 227 (6th Cir. 1994) (quoting *Anderson*, 477 U.S. at 249); therefore, "[t]he Court is not required or permitted . . . to judge the evidence or make findings of fact." *Williams*, 154 F. Supp. 2d at 1071. The purpose of summary judgment "is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried." *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 130 F. Supp. 2d 928, 930 (S.D. Ohio 1999). Ultimately, this Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52; *see also Atchley v. RK Co.*, 224 F.3d 537, 539 (6th Cir. 2000).

**III. Discussion**

*A. The Sexual Harassment Claims*

Under federal law, it is unlawful for any employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). Title VII does not permit individual liability for supervisors or managers; however, *respondeat superior* liability is incorporated within Title VII. *Wathen v. General Electric Co.,* 115 F.3d 400, 405 (6th Cir. 1997). Moreover, a claim for same-sex sexual harassment is cognizable under Title VII. *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998).

Two types of sexual harassment are recognized in the case law: (1) *quid pro quo* harassment, in which the employee's submission to sexual advances is an express or implied condition for receiving job benefits; and (2) hostile environment discrimination, in which the employee is subjected to offensive, sex-based conduct that is severe or pervasive enough to create an objectively hostile or abusive work environment. *Kauffman v. Allied Signal, Inc*., 970 F.2d 178, 182, 186 (6th Cir. 1992). Horton alleges sexual harassment of the latter sort.

A hostile work environment exists whenever "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment." *Harris v. Forklift Systems, Inc*., 510 U.S. 17, 21 (1993). "[A] sexually objectionable environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998). In making this determination,

> Workplace conduct is not measured in isolation; instead, whether an
> environment is sufficiently hostile or abusive must be judged by looking at all the

> circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.

*Clark County School District v. Breeden*, 532 U.S. 268, 270-71 (2001) (citations and internal quotation marks omitted). Thus, "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment'". *Id*. In hostile environment cases, the employer can escape *respondeat superior* liability if it can show that it responded adequately and effectively once it had notice of the harassment. *Kauffman*, 970 F.2d at 184.

The USPS alleges that the incidents Horton complains of were not serious and pervasive enough to constitute hostile work environment discrimination, as a matter of law. But the deposition and affidavit testimony presented by Horton could reasonably be read as demonstrating that the two incidents emphasized by Horton were part of a larger campaign of gossip, innuendo, and name-calling by certain of his co-workers, centering on his perceived homosexuality, that effectively destroyed Horton's respect and esteem among his co-workers. See, e.g., Doc. 52, Exh. 1 (Affidavit of Lyn Lilly), Doc. 52, Exh. 3 at 9-10 (Deposition of Anderson Hartfield). The presence of bathroom graffiti and the launching of what might be reasonably be seen as a baseless sexual harassment investigation against Horton, when taken in conjunction with widespread gossip, name-calling and joking about Horton's sexual orientation among other employees, would appear to rise beyond the level of good-natured teasing or isolated instances to severe, pervasive, and unwelcome harassment that a reasonable person would perceive as hostile or abusive.

Furthermore, there is sufficient evidence in the record to support a finding that USPS's response to these incidents was not "adequate and effective." For example, Robin Ferris's

"informal investigation" of the Feltman incident appears to have served mainly to embarrass Horton; the USPS's resolution of that incident (having Feltman, Meeks, and Russell Ferris review company policy on sexual harassment and watch a training video) might reasonably be seen as *pro forma* and inadequate; and USPS's decision to temporarily transfer Horton may have raised suspicion among his co-workers that he was being disciplined. (Doc. 49, Exh. A, at 71-72).

The USPS contends, however, that Horton should not now be permitted to raise a generalized hostile environment claim, because the EEO investigation in this case was purportedly confined to the graffiti and Feltman incidents. But the EEO opinion expressly noted that Horton "appear[ed] to raise a claim of hostile work environment sexual harassment," and proceeded to analyze that claim. (Doc. 49, Exh. G, at 12). Horton is thus not precluded from presenting evidence of related instances of sexual harassment to support his hostile work environment claim, for investigation of these facts would "reasonably [be] expected to grow out of the charge of discrimination." *EEOC v. Bailey Co.*, 563 F.2d 439, 446 (6th Cir.1977). Therefore, the USPS is not entitled to summary judgment on Horton's sexual harassment and hostile work environment claims.

***B. The Retaliation Claim***

The USPS contends that the third count of Horton's Second Amended Complaint, alleging unlawful retaliation for the filing of his EEO complaint, should be dismissed because Horton did not timely bring suit on it. The record shows that Horton lodged an appeal with the U.S. Merit Systems Protection Board ("MSPB") challenging his termination (called a "mixed case appeal") on May 7, 2007, after he had initiated this suit in federal court. Horton first raised his retaliation claim in his MSPB appeal; his original complaint in this Court did not include a retaliation claim.

(Doc. 1). The MSPB issued a decision upholding Horton's termination and rejecting his retaliation claim on September 11, 2007. (Doc. 49, Exh. H). That decision became final on October 16, 2007. 5 C.F.R. § 1201.113. On January 18, 2008, Horton amended his complaint in this Court to add a retaliation claim. (Doc. 19).

It is well-settled that "a complainant with a mixed case, who chooses to appeal the [MSPB]'s decision directly to the district court, has thirty days from the issuance of the [MSPB]'s final decision in which to file suit," and that such timely filing is a jurisdictional prerequisite to obtaining judicial review of a MSPB decision. *Johnson v. U.S. Postal Service*, 64 F.3d 233, 238 (6th Cir. 1995). Horton did not amend his complaint in this Court or otherwise seek review of his retaliation claim within the thirty-day window, and thus Count Three of his Second Amended Complaint must be dismissed.

**IV. Conclusion**

For the above reasons, Defendant's motion for summary judgment (Doc. 49) is granted as to Plaintiff's retaliation claim (Count Three of the Second Amended Complaint), and denied as to Counts One and Two.

IT IS SO ORDERED.

      s/ *David A. Katz*
      DAVID A. KATZ
      U. S. DISTRICT JUDGE